## Case No. 16,404.

### UNITED STATES v. STINER et al.

[8 B'atchf. 544.] 1

Circuit Court, S. D. New York.   Aug. 24, 1871.

FRAUDULENT CONVEYANCES—JURISDICTION OF FEDERAL COURTS—CREDITOR'S BILL.

1. An intent to defraud subsequent creditors is sufficient to avoid a conveyance, at the suit of such creditors, if it was either voluntary or not made in good faith.

2. Under the 11th section of the judiciary act of September 24th, 1789 (1 Stat. 78), this court has jurisdiction of a creditor's bill, brought by the United States, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars.

[Cited in Winter v. Swinburne, 8 Fed. 52.]

In equity.

Thomas Simons, Asst. U. S. Dist. Atty., for plaintiffs.

John Winslow, for Dankel and wife.

BLATCHFORD, District Judge. This is a creditor's bill, founded on a judgment, recovered by the United States, in the district court for this district, against the defendants [Joseph H.] Stiner, Cornelius J. Dankel, and [Bernard] Heller, on the 23d of March, 1870, and docketed against them on the 25th of March, 1870, for $11,040. On an execution issued thereon, $106.72 was made, the expenses of the marshal in making it being $109.16. Otherwise, the judgment and execution are unsatisfied. Such judgment was rendered against Stiner, as principal, and the others as sureties, in a stipulation given on the release of property seized in a suit in rem, brought by the United States against such property, being property found on the distillery premises of Stiner, for the forfeiture thereof, for a violation of the internal revenue laws. The bill is brought especially to reach certain real estate in 33d street, in the city of New York, and certain other real estate in 25th street, in said city, which formerly belonged to Cornelius J. Dankel, and which he, by a deed, dated November 1st, 1869, and recorded December 29th, 1869, at 55 minutes past 2 o'clock, p. m., in the office of the register of deeds of the city and county of New York, conveyed to the defendant [Adolph] Isaacson, and which Isaacson, by a lease, dated November 1st, 1869, and recorded June 12th, 1870, leased to said Cornelius J. Dankel, and which Isaacson conveyed to the defendant Georgine Dankel, the wife of the said Cornelius J. Dankel, by a deed, dated January 1st, 1870, and recorded May 14th, 1870. The bill charges, that, after the execution of the stipulation, and

---

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

prior to the recovery of the said judgment, and at or before the hour of noon, on the 29th of December, 1869, a verdict was rendered by the jury, in the said suit for forfeiture, condemning the property seized, and a decree of condemnation was thereupon duly entered; and that such several instruments were made without consideration, and not in good faith, and with the concurrence of the two Dankels and of Isaacson, in the design of defrauding the plaintiffs, and of transferring to the said Georgine Dankel the ostensible ownership of the property, in view of the liability of the said Cornelius J. Dankel, in consequence of his stipulation, and the rendering of said verdict and decree, and the judgment and execution in pursuance thereof, so as to prevent the plaintiffs from levying upon and selling any of said property, in satisfaction of their recovery and demand. The bill prays for an injunction restraining the Dankels and Isaacson from alienating or encumbering the said real estate, and for a receiver of the property of Stiner, Cornelius J. Dankel, and Heller.

The plaintiffs now move for an injunction against the Dankels, restraining them from alienating any of their property, and especially from alienating or incumbering the said real estate, and for the appointment of a receiver of all the property of each of the defendants. The notice of motion appears to have been served only on the solicitors for the Dankels, and the motion is opposed on their behalf.

The defendants Dankel and wife have put in an answer in the suit, which purports to be the answer of both of them, but is not signed or sworn to by Mrs. Dankel. It sets up, that, when Dankel conveyed the premises to Isaacson, Dankel did not owe the plaintiffs any money, and they did not become judgment creditors of his till the 23d of March, 1870; that the plaintiffs have no right to inquire into any conveyance made by Dankel of his real estate before they became creditors of his; that the conveyance to Isaacson was made in pursuance of an agreement made prior to November 1st, 1869, by which a cash payment of $2,000 was to be made by Isaacson to Dankel, on the delivery of the deed, and Isaacson was to give certain promissory notes to Dankel, and certain other payments, in regular instalments, of $5,000 each, secured by mortgage, were to be made thereafter, at certain specified times; that such cash payment of $2,000 was made when said deed was so delivered, on the 1st of November, 1869, and at that time the notes were made and delivered, in pursuance of the agreement; that, on or about the 1st of January, 1870, Isaacson, finding himself unable to pay such notes, which were then about maturing and had matured, made an agreement with Mrs. Dankel to sell the premises to her for a certain and valuable consideration, which, however,

is not stated, and then conveyed such premises to her on terms satisfactory to all concerned, which terms, however, are not stated; that the plaintiffs were not judgment creditors of Dankel at the time of the conveyance to Isaacson, or at the time of the conveyance to Mrs. Dankel; that, prior to the sale of the premises to Isaacson, Mrs. Dankel had an interest in them, and was a part owner of them, and her money had been used by her husband in their purchase, to the amount of about or upwards of $1,000; that, several months before the 1st of November, 1869, Dankel and wife had taken steps to sell such real estate, and without reference to the claims of any possible creditors; and that the sale to Isaacson was not made for the purpose of cheating or defrauding the plaintiffs.

In addition to the facts set forth in the bill in regard to the deeds and lease, it appears, by affidavit, that Isaacson executed to Dankel a mortgage on the premises referred to, for $25,000, dated November 1st, 1869, and recorded January 12th, 1870; that a satisfaction of such mortgage was recorded March 2d, 1870; and that Isaacson and his wife executed to one Joseph Fleischel a mortgage on the same premises, dated December 20th, 1869, for $25,000, and recorded May 14th, 1870, satisfaction of which was recorded January 16th, 1871. It also appears, by the affidavit of Cornelius Stagg that, in January, 1871, Isaacson stated to Stagg, that he resided in Brooklyn, and was by occupation a vermin destroyer, that, about November, 1869, Dankel proposed to him to make a purchase of said premises, that he was induced by Dankel and his friends to enter into an arrangement for the transfer of the property to him, not knowing at the time for what purpose, that he afterwards discovered that it was for the purpose of Dankel's avoiding his responsibility in a suit then pending in the district court, that, in accordance with said arrangement, he, Isaacson, on taking a deed of the property, paid Dankel $3,000, and gave him a promissory note for $2,150, due about January 1st, 1870, and a mortgage on the property for $25,000, payable in instalments of $5,000, the first becoming due about January 1st, 1870, and a lease of the 25th street premises, that it was agreed between him, Isaacson, and Dankel, that, if the note, or the first instalment of $5,000 on the mortgage, should not be paid when due, the entire arrangement should become void, and the property should revert to the possession of Dankel, and it was also agreed that Dankel should collect and pay to Isaacson the rents of all of the said property, that he, Isaacson, at the request of Dankel, executed the mortgage to Fleischel, for the purpose, as was stated to him by Dankel, of money being raised upon it by Fleischel, to be applied to the prior mortgage executed to Dankel, but that no money was paid by

Fleischel to Isaacson in consideration of the execution of the mortgage, nor was any money ever raised thereon, or so applied, that, at some time during January, 1870, Dankel called on him, Isaacson, and stated, that, the note and the first instalment of the mortgage being due and unpaid, the whole transaction was annulled, as agreed on, and he, Dankel, would give him, Isaacson, back his note, or destroy it, the mortgage to him, Dankel, to remain in his possession, and he, Dankel, to destroy the lease, and that he, Dankel, did not wish to hold the property in his name, and he, Isaacson, should make out a deed of it to Mrs. Dankel, that this was done, that the consideration expressed in the deed to Mrs. Dankel was $500, but he, Isaacson, never received anything from her, or from any one, towards such consideration, and that Dankel paid to him, Isaacson, about $1,300, as rents of the property, up to and including January, 1870. Mr. Stagg also states, in his affidavit, that, in January or February, 1871, he had an interview with Mrs. Dankel, who admitted to him that she never paid any consideration to Isaacson for the conveyance of the property to her, and did not know that any was ever paid, that she never saw Isaacson until he brought her the deed already executed, which she then gave to her husband, who kept the same in his possession, that her husband told her that his attorney advised that she should call the transaction of the transfer of the property to her by Isaacson, a sale, that, on the afternoon of the 31st of December, 1869, her husband came home looking worried, and told her that he had been at his lawyer's, and that, a few days after, said deed was brought to her. Mr. Stagg further says, in his affidavit, that, in January, 1871, he had an interview with Cornelius J. Dankel, who admitted to him, that, the day the distillery was condemned, he heard of it, and the next day Isaacson sold the property to his wife.

No affidavit is produced from Isaacson. Dankel makes no affidavit in contradiction of his statements to Stagg, nor does Mrs. Dankel contradict Stagg's statement as to what she said in his conversation with her. Mrs. Dankel states, in her affidavit, that, when the deed from Isaacson was executed and delivered to her, it was thought best, in view of the fact that Mr. Dankel was in ill health, that, as Isaacson was unable to fulfil his contract, an agreement should be made with him, by which he should convey the premises to her, Mrs. Dankel, and that that was done.

The ground is taken, on the part of Dankel and his wife, that the plaintiffs cannot maintain this suit. unless they were creditors of Dankel when he conveyed to Isaacson. This is not the law. Under the statute and decisions in New York, as well as under the decisions of the supreme court of the United States, an intent to defraud subsequent cred-itors is sufficient to avoid a conveyance, if it was either voluntary or not made in good faith. I had occasion to examine this question recently, in the case of Sedgwick v. Place [Case No. 12,620]. In the present case, there can be no doubt that the whole scheme of the conveyance to Isaacson was a plan to defraud the United States, in view of the approaching trial and the expected condemnation of Dankel's distillery property, and that Dankel and Isaacson knowingly acted in bad faith. But, at all events, before the conveyance to Mrs. Dankel, the verdict of condemnation was rendered, the stipulation having been previously given. The formal judgment against the stipulators had not been entered, but, short of that, their liability had lost its contingent character. If any validity be acknowledged in the agreement between Isaacson and Dankel, the reversion of the title to the premises, on Isaacson's default, was to Dankel, and the conveyance of the premises by Isaacson to Mrs. Dankel, at Dankel's request, in pursuance of Isaacson's liability under the agreement, such conveyance to Mrs. Dankel being without considera-tion, leaves the premises, as between Dankel and his creditors, in the same position as if they had been conveyed by Isaacson back to Dankel, and, between Mrs. Dankel and such creditors, in the same position as if, after such conveyance back, Dankel had conveyed them to his wife, as a voluntary settlement.

It is urged, in the written brief of the counsel for Dankel and wife (the motion not having been argued orally), that this court has no jurisdiction of this case; that this is the first time it was ever claimed that a suit of this sort could be maintained in this court; that the view that this court has no such jurisdiction is held in other districts; and that the fact, that such jurisdiction does not exist, is so well understood and conceded by the bar and the courts, that, at the last session of congress, an act was introduced, and is now pending, to confer jurisdiction on the courts of the United States in such cases. The point of the objection to the jurisdiction of the court is not stated, and it is not possible to conceive what it is. The jurisdiction is plainly conferred by statute. The eleventh section of the act of September 24th, 1789 (1 Stat. 78), contains this provision: "The circuit courts shall have original cognizance, concurrent with the courts of the several states, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, and the United States are plaintiffs or petitioners." This is a suit of a civil nature, in equity, in which the United States are plaintiffs. It may be that it does not sufficiently appear by the bill that the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, although the judgment in favor of the plaintiffs exceeds that amount, for the want of

averments in the bill or admissions in the answer that the judgment debtors have property exceeding in value five hundred dollars, exclusive of costs, or that the real estate referred to exceeds in value that amount, exclusive of costs. But, as the real estate, which it is the principal object of the bill to reach, is undoubtedly of the value named in the statute, the bill can readily be amended. With that done, there can be no difficulty in the jurisdiction. The district court would have no jurisdiction of the suit, for jurisdiction is conferred upon it, by section 9 of the act before cited, only of suits at common law, where the United States sue, and the matter in dispute amounts, exclusive of costs, to the sum or value of one hundred dollars. If the United States cannot bring such a suit as this in a circuit court, they can bring it in no court of the United States. It would follow, then, that, for eighty years, whenever the United States have had occasion to bring a creditor's bill, they have been unable to bring it in a court of the United States; for, the only legislation covering the case is in the act of 1789. The proposition has no foundation. The act referred to as introduced at the last session of congress, to confer jurisdiction in cases of this kind, was, as I understand it, an act to make the remedy in favor of the United States, in cases of this kind, more speedy and efficient, and not to confer jurisdiction over creditors' bills by the United States on the circuit courts, a creditor's bill being a suit of a civil nature, in equity, in the exercise of a recognized branch of equity jurisdiction, and being covered by the eleventh section of the act of 1789.

The plaintiffs may amend the bill, as suggested, and then an injunction will issue enjoining Dankel from making any transfer of any of his property, and enjoining him and Mrs. Dankel from making any transfer of said real estate and from incumbering the same. and a receiver will be appointed of said real estate and of all the property, equitable interests, things in action, and effects of Dankel. If notice of the motion is not necessary as to Stiner and Heller, the receivership will extend to their property.